K.E. VOGT
6150 RHONES QUARTER RD
TYLER TX 75707
903-231-3405

U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

AUG 0 9 2012

DAVID J. MALAND, CLERK
BY
DEPUTY _____

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS, TYLER DIVISION

| | |
|---|---|
| K. E. VOGT | : |
| Plaintiff | : CASE NO. 6:12cv504 MHS/JKG |
| vs. | : VERIFIED COMPLAINT |
| SANDRA COLEMAN as administrator of the estate of Paul Kelley Sr., THE ESTATE OF PAUL W KELLEY SR; PAUL W. KELLEY (aka Paul Kelly); Dustin Smith, Jeff Semrad, Doug Williams, US Bank and Sandy Facer | : DEMAND FOR JURY TRIAL |
| Defendants | : |

COMES NOW plaintiff and files this verified complaint alleging as follows:

SUBJECT MATTER JURISDICTION

1. This court has subject matter jurisdiction pursuant to 26 USC § 7431(a)(2) (Civil damages for unauthorized inspection or disclosure of returns and return information by state officers), 18 U.S.C.A. § 1961 et seq., (The Federal Racketeering Act); and the Supplemental Jurisdiction Statute 28 U.S.C.A. § 1367 allowing for pendent jurisdiction over state law claims to include violations of: the Idaho racketeering statute, the Texas Deceptive Business Practices Act, and for malicious prosecution and abuse of process.

PERSONAL JURISDICTION

2. Plaintiff is a resident of the state of Texas, county of smith within the jurisdiction of this federal court. Plaintiff sues in her personal capacity and as assignee to

1.

the federal RICO claim, Idaho state RICO claim [1], state malicious prosecution and abuse of process claims of Hollie Telford. [2]

3. Defendant Sandra Coleman is sued in her personal capacity and as the administrator of the estate of Paul Kelley Sr.; The Estate of Paul Kelley Sr, and the son Paul Kelley aka Paul Kelly, are residents of Smith County Texas, within the jurisdiction of this federal court. Furthermore, the Administrator is sued for having conspired to deed the property to the son erroneously as Paul W. Kelly, when all parties had been sued and served process from the State of Idaho, and defaulted on that process.

4. Defendants Dustin Smith, Jeff Semrad and Doug Williams are state officers for the state of Idaho who while acting in their capacities as investigative officers for the state of Idaho re alleged crimes against assignor Holli for allegedly filing false documents with the Oneida County Assessor's office re Holli's trustee capacity over certain real property in that county, without authorization, seized, inspected and disclosed confidential and privileged information re plaintiff's 2009 and 2010 returns located at

---

1. See *Holmes v. Security Investor Protection Corp.*, 530 U.S. 258 (1992) (RICO claims are assignable through subrogation or direct assignment.) Followed in Federal Ins. v. Parello, 767 F. Supp 157 (N.D. Ill. 1990) (RICO claims assignable.),
2. Texas allows for the assignment of personal injury claims both by statute and common law. See TEX. PROP. CODE § 12.014 (authorizing the transfer of all causes of action, including personal injury claims); Ferrer, assignee of Labao v. Guevara, No. 08-04-00200-CV (TX.App. 2008); Also see PPG INDUSTRIES, INC. v. JMB/HOUSTON CENTERS, 146 S.W.3d 79 (2004) *(The rule in Texas now is that causes of action – including statutory claims and personal injury claims – are freely assignable. Bradshaw v. White, 2004 WL 1045469 at \* 3 (Tex. App. – El Paso 2004, no writ) (not designated for publication) (holding that individual's assignment of a portion of her personal injury claim to his chiropractor was valid); Gandy, 925 S.W.2d at 707 (confirming the general rule that actions are freely assignable in Texas); PPG Industries v. JMB / Houston Centers Partners Limited Partners Ltd.*, 146 S.W.3d 79, 87 (Tex. 2004) (same)., following Beech Aircraft Corp. v. Jinkins, 739 S.W.2d 19, 22 (Tex. 1987) ("[A] cause of action for damages for personal injuries may may be sold or assigned in Texas.); *Southern County Mutual Insurance Company v. Ochoa, 19 S.W.3d 452, 465 (Tex. App. –* Corpus Christi, 2000, no pet.) ("once a cause of action is assigned or transferred, the assignee becomes the real party in interest with authority to prosecute the suit to judgment"); *This is consistent with cases holding that Federal Tort Claims Act claims are assignable* and that the assignee also has the benefit of the waiver of sovereign immunity. *United States v. Aetna Cas. & Sur. Co.*, 388 U.S. 366 (1949); see also, *Insurance Co. of the West v. United States*, 243 F.3d 1367, 1374 (Fed. Cir. 2001) (claims arising under the Federal Tucker Act are assignable and waiver of sovereign immunity applies equally in favor of the assignee.)

Holli's home office at the trust property in Oneida County and thereafter conspired with one another to place plaintiff into indefinate audits with the IRS for the sole purpose of retaliating against plaintiff for being a witness for Holli Telford in re Oneida County Case no. 2011-CV-66, Telford v. Sandra Coleman, et al. Plaintiff has suffered damages in the inability to be refunded over payments due her dating from 2009 forward as a result of these defendant's conduct, as well as from the loss of properties and economic advantages to be gained by these deprived over payments. In addition, the inspection and disclosure committed by these officers was willful, retaliatory, and the product of gross negligence thereby justifying punitive damages and attorney fees as provided in 7431.

5. Defendant US Bank is a resident of the state of Texas having an office located at U.S. Bank National Association, 14241 Dallas Parkway, Dallas, TX 75254 and doing business in this state. This defendant has a 6 year history of committing wire fraud, mail fraud and extortion crimes, with the last overt act occurring on August 23, 2011 when an officer of this bank, Mgr. Sandy Facer, falsely and corruptly accused Holli of forging FACER's notary to a pleading filed in Oneida County, Idaho case no. 2011-CV-66 (prosecuted against Texas residents Sandra Coleman, et al.). This false accusation was made for the sole purpose of extorting Holli and others, including plaintiff of causes of action set forth in that Consumer Protection Act case, and to estop other RICO and DTPA claims against this defendant. The Oneida County case was successfully obstructed on March 28, 2012 when an order of dismissal with prejudice was entered. On April 6, 2012, the forgery charge by US bank was dismissed with prejudice in favor of Holli at the lower probable cause standard of proof.

6. Defendant SANDY FACER sued in her servant capacity to US Bank, is a resident of the state of Idaho Sandy Facer, falsely and corruptly accused Holli of forging FACER's notary to a pleading filed in Oneida County, Idaho case no. 2011-CV-66 (prosecuted against Texas residents Sandra Coleman, et al.). This false accusation was made for the sole purpose of extorting Holli and others, including plaintiff of causes of action set forth in that Consumer Protection Act case, and to estop other RICO and DTPA claims against her master and employer US Bank. The Oneida County case was successfully obstructed on March 28, 2012 when an order of dismissal was entered. On

April 6, 2012, the forgery charge by US bank was dismissed with prejudice in favor of Holli at the lower probable cause standard of proof.

## VENUE JURISDICTION

7. Venue in this jurisdiction is proper under the federal RICO act's venue statute in that the majority of the defendants reside in this jurisdiction, and plaintiff's property rights were damaged in this jurisdiction. In addition, under the general venue statute, 28 USC 1391, and the Calder effects test, venue is proper in this jurisdiction where the effect of the injuries were felt.

## JURISDICTIONAL FACTS

8. Assignor, Holli Telford entered into a contract with the Smith County Assessor's Office to purchase certain real property located in Flint Texas and owned by Smith County. The property was up for resale as a struck off property. Defendant ESTATE of PAUL KELLEY SR was the defaulted owner on that property and had passed the period of redemption to reclaim any rights to that property at the time of the resale.

9. Smith County sold that property to Holli while engaging in private commerce activities. After Smith County informed Holli that she was the new owner via recorded phone calls to Holli's trust property in Oneida County Idaho, Smith County informed Holli that Holli could occupy the property and make improvements thereto. Smith County's lawfirm in an email communication to Holli, promised forthwith to mail the quitclaim deed to Holli's trust property in Oneida County Idaho. Based on these promises, Holli excavated the property and placed a manufactured home on this property significantly increasing it's value. The lender on the manufactured home was a lien-holder whose business was located in Oneida County Idaho.

10. After this acquisition, Holli then rented to the property to plaintiff and plaintiff acquired renter's insurance on the residence. See attached copy of plaintiff's substitute renter's insurance policy through ASSURANT as exhibit "1" attached.

11. Smith county after negotiating Hollis purchase fee of $4,214.77 due on the through Holli's bank under Holli's letter of credit, and AFTER Holli made these substantial improvements to the property and contracted out the use of the property as a

residence for VOGT, colluded with Defendant COLEMAN and PAUL W. KELLEY junior in violation of the Texas DTPA, to secretly appear at the Smith County Assessor's office and pay a higher fee for the property. Smith County through their attorneys destroyed Holi's original deeding documents and executed fraudulent ones in favor of Paul Kelley JR

12. When Holli learned about this fraud, Holli filed suit against COLEMAN, the heirs of the estate of Paul Kelley and Smith County in Oneida County, Idaho on June 1, 2011 as Oneida County case no. 2011-CV-66. Holli also sued US Bank in a separate action for RICO violations concerning her bank account.

13. Within weeks of Holli suing US Bank, US Bank colluded with Oneida County executive officials to falsely charge Holli with forging a US Bank officer's notary to a power of attorney on the Idaho farm property wherein Holli was the designated trustee, in order to obtain a false fraud conviction against Holli that would negatively impact Holli's suits against US Bank and COLEMAN, et al.

14. In pursuit of this false accusation, defendants SMITH, SEMRAD and WILLIAMS obtained a false and incompetent general search warrant which they served without a supporting probable cause affidavit (in order to manipulate the affidavit after the fact) and these defendants raided Hollis trust property where HOLLI was presently residing. The search was limited to the challenged power of attorney and USDA contracts pertaining to improvements to the house. Instead, of limiting the scope of the search and seizure to the above specified items, these officers handcuffed Holli to a chair while they proceeded to take every paper, electronic record, computer, electronic device, bank records, tax files, etc. from Holli's home.

15. Holli by contract, administrated over the tax files of a small clientelle of taxpapers, including plaintiff's tax files. During the illegal search, HOLLI informed the officers that they were not authorized to inspect, search, seize, disclose or access any taxpayer client files, as there were no charges in the search warrant relating to these confidential files. The officers ignored HOLLI. HOLLI wanted to film the search but she had been bilaterally handcuffed to a chair. HOLLI gave the officers the phone numbers to several of her clients, including plaintiff herein, to verify non-consent for the taking of their federal tax files. During the search, HOLLI witnessed several officers place phone calls to Holli's taxpayer clients to verify if HOLLI was in legal possession of their tax

files and whether these officers had consent to remove these files. Every client including plaintiff herein, when contacted by members of the Oneida County sheriff's office, demanded that their files not be inspected, searched, seized, removed from Hollis premises, or otherwise accessed in any manner.

16. Irrespective of these demands of non-consent, the sheriff deputies inspected, search and seized all of these IRS files and later contacted the social security department and the IRS and maliciously and corruptly interfered with the over payments due these taxpayers, including plaintiff, for the years of 2009, 2010 and future years. Attached hereto as exhibit "2" is one such electronic communication to a taxpayer relative of HOLLI wherein SEMRAD admitted to these unauthorized contacts with federal agencies in pursuit of false and fictitious fraud charges against HOLLI.

17. After obstructing the progress of every seized tax file, Defendants SMITH, SEMRAD and WILLIAMS continued to retain these IRS tax files until the criminal charges against HOLLI were dismissed with prejudice on April 5, 2012 for failure to establish probable cause that HOLLI had committed any forgery or fraud crime related to the POA notarized by US Bank or the trust property itself. Upon the favorable termination of the criminal case in Holli's favor, these executive officials destroyed a vast majority of each illegally seized tax file, including plaintiffs. However, continual complaints made through out the criminal proceedings demanding return of these files, establish without doubt their illegal seizure in official proceedings having no relationship whatsoever to tax matters or to the person's tax files who were seized.

18. While the criminal proceedings re the "forged" power of attorney on the Oneida County, Idaho property were pending, US bank filed another notarial forgery charge against HOLLI in the Oneida County case filed against COLEMAN, et al. As a consequence, the Oneida County court refused to hear Holli's claims against COLEMAN, et al. on it's merits, and dismissed Holli's case without prejudice on March 29, 2012 as to COLEMAN and the KELLEY heirs - until the new forgery charge could be decided yea or nea. One week later on April 5, 2012, the forgery charge advanced by defendant US bank manager FACER, was dismissed with prejudice for lack of probable cause when HOLLI produced the original of the document that FACER notarized.

19. While all of the foregoing proceedings were taking place, COLEMAN and

the KELLEY heirs trespassed onto the properties originally purchased by Telford and rented to plaintiff, and stole and converted plaintiff's personal properties, construction equipment and the home - through either removal of these items from the property or through an illegal lock out preventing plaintiff's access thereto. Furthermore, to solidify plaintiff's denied access, COLEMAN and the KELLEY heirs manned vicious dogs at the property so that plaintiff could not go onto the property for any purpose. Finally, local authorities refuse to act criminally on the matter because they contend that it is a civil matter and plaintiff's insurance company wont dispose of the claim until there is a civil ruling finding the COLEMAN defendants at fault for unlawful detainer or theft.

## FIRST CAUSE OF ACTION
(Willful, Retaliatory, And Grossly Negligent Violations of 26 USC § 7431(a)(2) By State Officers SMITH, SEMRAD and WILLIAMS)

20.  Plaintiff alleges that defendants SMITH, SEMRAD and WILLIAMS while acting as state officers, willfully and in a grossly negligent and retaliatory manner inspected and disclosed confidential tax return matters in violation of 26 USC § 7431(a)(2), having nothing to due with an official proceeding or with a taxpayer's illegal or tortious action, to a malicious injury of the taxpayer.

21.  Plaintiff is entitled to statutory compensatory and punitive damages and does hereby petition for same.

## SECOND CAUSE OF ACTION
(Violations of the Idaho and Federal Racketeering Acts Against All Defendants)

22.  Plaintiff alleges that all defendants associated in fact to create a criminal enterprise dating back to 2006 with the original conspirators SMITH and US BANK, to commit multiple predicate acts of mail fraud, wire fraud, extortion as defined by Idaho law, false promise, etc., and with the last overt predicate act occurring on April 6, 2012 but continuing through todays date in light of continued theft and control over plaintiff's properties in violation of these acts.

23. Plaintiff alleges that all of the fraudulent acts were aided by the use of the mails or the wires via telephone or email, and resulted in multiple acts of extortion within the meaning of the Idaho racketeering act against plaintiff both personally and as the assignee of Holli Telford, resulting in profound damages. Plaintiff alleges that "Section 1962(c) was intended to prevent the operation of a legitimate business or union through racketeering." Id. (citing David B. Smith & Terrance G. Reed, Civil RICO, ¶ 5.01, p. 5-2 (1997) and that Vanderbilt Mortgage and Finance, Inc. v. Flores, No. C-09-312 (S.D.Tex. 2010) authorizes plaintiff's action against the Defendants under RICO.

1. Pattern of Racketeering Activity -- Predicate Acts

Plaintiff alleges multiple violations in support of their RICO "racketeering activity" allegations, including: 18 U.S.C. § 1341 (mail fraud), 1343 (wire fraud), and 1344 (lender fraud), 1951 (extortion with and without color of law), as well as conspiracy to commit these acts. In effect, Defendants COLEMAN, ESTATE and KELLY stole plaintiff's land and residence properties contained thereon through multiple acts of mail and wire fraud and by extorting plaintiff and her assignor out of these properties through abuse of the criminal process as prohibited under Idaho's extortion statute remedial through federal RICO. Defendants US BANK and FACER aided in this theft and also stole plaintiff's business properties by stealing plaintiff's business income commencing 2006 forward and then using the criminal process to avoid liability for 6 years of repeated acts of theft.

a. Mail and Wire Fraud

Plaintiff alleges that all defendant engaged in (1) a scheme or artifice to defraud or to obtain money or property by means of false pretenses, representations, or promises; (2) the Defendants used the interstate mails or wires for the purpose of executing their scheme; and (3) they had a specific intent to defraud either by revising, participating in, or abetting the scheme." Hewlett-Packard Co. v. Byd:Sign, Inc., 2007 WL 275476, at *3 (E.D. Tex. Jan. 25, 2007).

(i) Against COLEMAN, ESTATE and KELLY

Telford purchased from Smith County certain land previously owned by the Estate of Paul Kelley and which had gone into foreclosure by court order in 2009. See exhibit "3" attached for 2007 ownership record on property showing property owned

by the ESTATE OF PAUL W. KELLEY. Smith county did not sell the property at their first sale in 2010 and hence conducted a resale of the property in March of 2011. Telford purchased the property at the resale. The Law Offices of Linebarger, Goggan, Blair and Sampson were Smith County's attorneys taking in the monies for the purchases of struck off properties to Smith County. On March 1, 2011, Holli Telford wired $4,214.77 to the law offices of Linebarger, Goggan, Blair and Sampson as a deposit for the purchase of the Kelley estate property. See exhibit "4" attached for wire transfer confirmation. See exhibit "5" attached for letter by Telford's bank indicating that the funds to pay for the Kelley estate property were drawn off of loan proceeds from Telford's credit union under a letter of credit given to Smith County.

In April 3, 2011, Smith County called Telford several times to verify that TELFORD had been sold the real property in question. The calls were recorded. Smith County's law offices then emailed Telford and informed Telford that they had mailed the original bill of sale and Deed on the property to Telford, but that the original documents had been returned to the law offices of Linebarger, Goggan, Blair and Sampson based on an incorrect mailing address for Telford. See this email attached hereto as exhibit "6". Telford gave Linebarger her correct address in Malad Idaho and asked that Linebarger resend the original documents to Telford.

After negotiating purchase fees on the property and promising to forward Telford the deeding documents, Smith County informed Telford and others that Telford could improve the land. Based upon these later dicscovered false representations made to Telford and others, Telford, plaintiff and others took possession of their newly acquired property and committed massive improvements thereto. Specifically Telford excavated the land, placed a double-wide manufactured home on the land, and installed a dump trailer and excavation-construction equipment on the land for excavation and construction purposes. VOGT fully furnished home.

While Telford and others were committing the foregoing improvements to the land, KELLEY's ex wife and KELLEYS son Paul Kelley (Kelly), came onto the land and queried Telford, plaintiff and others about their occupation of the land. These persons were told that TELFORD had purchased the land from Smith County, paid Smith County a fee for the land, and were waiting for the deed to come in the mail. After Telford

committed upwards of $300,000 in improvements to the property, Defendants COLEMAN, ESTATE and KELLEY aka KELLY approached SMITH County and offered to pay a higher fee for the land already sold to TELFORD. Linebarger having yet to re-mail the original deeding documents to Telford, stopped the mailing, destroyed the original deeding documents, and re-deeded the property to Paul Kelley's son, Paul Kelley (erroneously listed as Paul Kelly on the Smith County Recorders Website) on July 20, 2011. See exhibit "7" attached hereto for this property record by Smith County Appraisal District. This Deeding Act took place almost 7 weeks after COLEMAN and KEELY JR had defaulted in the Idaho lawsuit which they successfully obstructed by bringing false criminal proceedings against Telford via US Bank's charge of notary fraud.

    (ii) US BANK from 2006 forward, stole hundreds of thousands of dollars out of the business account of plaintiff's assignor, in yet another fraudulent scheme involving a land sale in which it was determined that Telford committed no crime. The US Bank account took in credit card transactions on a daily basis and stole all of these transactions from plaintiff's assignor. US BANK's actions also resulted in the shut down of plaintiff's assignor's multi million dollar business. Plaintiff seeks all remedies do thereby.

    b. Extortion Under the Idaho Racketeering Act adopted as extortion under the Hobbs Act 18 U.S.C. § 1951.

The Idaho racketeering act prohibits accusing a person of a false crime in order to interfere with that person's legal cause of action. All Defendants above initiated criminal process against Holli in re Oneida County case no. 2011-CR-958 in order to falsely accuse Telford of notarial forgery crimes and thereby defeat Telford's causes of action by discrediting Telford's affidavits and declarations supporting her evidence in the consumer fraud act case brought against the Coleman and Kelley defendants herein.

    US BANK perpetrated the scheme by proffering the notary who would commit the wholesale perjury to effect obstruction of these cases through false criminal accusations against plaintiff's assignor.

    These defendants did successfully extort plaintiff and continue their extortion scheme into this forum.

    2.     STANDING TO PURSUE RICO

Plaintiff alleges standing within the meaning of **Vanderbilt Mortgage and Finance, Inc. v. Flores, No. C-09-312 (S.D.Tex. 2010)** under civil RICO because she and/or her assignor were injured in their business or personal property by reason of a violation of section 1962 of this chapter which permits recovery threefold the damages they sustained." Anderson v. Kutak, Rock & Campbell (In re Taxable Mun. Bond Sec. Litig.), 51 F.3d 518, 521 (5th Cir. 1995) (quoting 18 U.S.C. § 1964(c)).

3. ENTERPRISE

The defendants did associate in fact and create and enterprise of individuals which combined one with another and committed racketeering acts against plaintiff and plaintiff's assignor for a common and mutual illegal goal.

24. Plaintiff alleges that the actions were done in conspiracy of one with another and that the Defendant's assets were substantially decreased on an interstate wide basis as a result of the racketeering acts of the Defendants.

### THIRD CAUSE OF ACTION
(Abuse of process against all defendants)

25. Plaintiff alleges that the defendants abused process for ulterior purposes, by committing willful acts in the use of the process not proper in the regular conduct of the proceeding. It is not legitimate to interject false criminal process into a civil proceeding to exact a collateral advantage in the civil proceeding by the using the criminal process as a threat or a club and thereby commit extortion of causes of action through means fabricated for that purpose. All defendants are guilty of abuse of process and plaintiff seeks all damages allowed by law for that abuse.

### FOURTH CAUSE OF ACTION
(MALICIOUS PROSECUTION against all defendants, including the state defendants in their executive capacities as investigators of alleged crimes)

26. Plaintiff alleges that she was criminally prosecuted, with malice as

probable cause was shown to be false, the proceedings terminated in plaintiff's favor, and plaintiff was damages thereby.

27. Plaintiff seeks all damages accorded by law.

### FIFTH CAUSE OF ACTION
(Unlawful Detainer by defendant COLEMAN)

28. Plaintiff alleges that Defendant COLEMAN has unlawfully detained properties belonging to plaintiff both personally and as an assignee. Plaintiff seeks an order finding unlawful detention, an order directing the return of plaintiff's personal properties, an order directing that title in the real property be conveyed to plaintiff, an order that all monies due and owing Smith County be hereby forfeited as a result of Smith county's improper conveyance of title to COLEMAN or heirs, an order directing COLEMAN to pay treble damages for unlawful detention, an order directing plaintiff's insurance company to pay plaintiff's losses suffered from theft and vandalism and subsequent subrogation of the insurer to retrieve it's losses from COLEMAN, and any other order the law may allow for the unlawful detention of plaintiff's properties.

### SIXTH CAUSE OF ACTION
(Deceptive Trade and Practices Against All defendants)

29. The Defendants did engage in false, misleading, or deceptive acts or practices for the purpose of interfering with fair trade, consumer business and practices.

30. Plaintiff was damaged by the fraudulent acts and practices as above mentioned.

31. Plaintiff seeks treble damages authorized hereby.

### SEVENTH CAUSE OF ACTION
(PREJUDGMENT INTEREST)

32. Plaintiff alleges that she is entitled to prejudgment on all losses that can be calculated to a reasonable certainty and so seeks.

WHEREFORE PLAINTIFF PRAYS FOR THE FOLLOWING:

1. For general, special and punitive damages as the law may allow for plaintiff's tort causes of action:

2. For actual real property damages of $365,000 by the Coleman and Kelley defendants for unlawful detainer and racketeering, times 3;

3. For actual damages of $12 miilion to the date of August 2012 by US BANK for racketeering violation times 3;

4. For actual damages of $300,00 by SMITH, WILLIAM and SEMRAD for racketeering violation times 3;

5. For punitive damages against SMITH, WILLIAM and SEMRAD for violations of 26 USC § 7431(a)(2);

6. For pre and post judgment interest;

7. For injunctive and equitable relief as allowed by law;

8. For attorneys fees and court costs, and;

9. For trial by jury unless the defendant defaults, then by declaration of damages pursuant to 28 USC 1746(2)


Dated: August 8, 2012

_____
K.E.Vogt